UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JANE DOE,

                                               **Civil Case No.: 18-cv-9711**
                                               **PLAINTIFF DEMANDS**
              Plaintiff,                 **A TRIAL BY JURY**

           *-against-*                           **COMPLAINT**

THE NEW YORK AND PRESBYTERIAN HOSPITAL,
JUAN CARLOS GARCIA, individually,
CHIEDOZIE ANYANWU, individually,
CHASTITY CRUZ, individually,
THOMAS GUGLIEMO, individually,
LUCRENCIA ORPHEE, individually,
CHRISTOPHER WALKER, individually,
FARLEY OBUSAN, individually,
ROBERTO HUNTE JR, individually,
AUDREA BLACHARD, individually,
JAMELA DANIELS, individually,
TARIK COLLINS, individually,
MICHAEL DZCEZ, individually,
JENSI MERCEDES, individually,
MAY FLORES, individually,
LESTER WELCH, individually,
MIRIAM NOLASCO, individually,

                        Defendants.
------------------------------------------------------x


       Plaintiff, JANE DOE, by and through her attorneys, DEREK SMITH LAW GROUP,

PLLC, hereby complains of Defendants, THE NEW YORK AND PRESBYTERIAN

HOSPITAL, (hereinafter referred to as "NYP"), JUAN CARLOS GARCIA, individually,

CHIEDOZIE ANYANWU, individually, CHASTITY CRUZ, individually, THOMAS

GUGLIEMO, individually, LUCRENCIA ORPHEE, individually, CHRISTOPHER WALKER,

individually, FARLEY OBUSAN, individually, ROBERTO HUNTE JR, individually,

AUDREA BLACHARD, individually, JAMELA DANIELS, individually, TARIK COLLINS,

individually, MICHAEL DZCEZ, individually, JENSI MERCEDES, individually, CARLOS NOYOLA individually, MAY FLORES, individually, LESTER WELCH, individually, MIRIAM NOLASCO, individually, and collectively referred to as "Defendants" upon information and belief, as follows:

## NATURE OF CASE

Plaintiff, JANE DOE, complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367 seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, sex discrimination, gender discrimination, sexual harassment, hostile work environment, retaliation and wrongful termination, by Defendants.

## JURISDICTION AND VENUE

1.    Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2.    Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3.    Around September 5, 2017, Plaintiff JANE DOE submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is

520-2017-02218.

4.   Around August 2, 2018, Plaintiff JANE DOE received a Right to Sue Letter from the EEOC for her federal charge number 520-2017-02218.

5.   As such, Plaintiff satisfied all administrative prerequisites and is timely filing this case within ninety (90) days of receiving her Right to Sue letter.

6.   Venue is proper in this court, as the events giving rise to this action arose in New York County, within the Southern District of New York.

## PARTIES

7.   Plaintiff JANE DOE (hereinafter named ("Plaintiff" or "DOE") is an individual female residing in the State of New York, New York County.

8.   At all times material, Defendant THE NEW YORK AND PRESBYTERIAN HOSPITAL (hereinafter referred to as "Defendant" and/or "NY PRESBYTERIAN") is a domestic not-for-profit corporation duly existing by the virtue of the laws of the State of New York, that does business in the State of New York.

9.   At all times material, Defendant DR. JUAN CARLOS GARCIA (hereinafter "DR. JUAN CARLOS GARCIA.") held the position of EMERGENCY ROOM ATTENDING PHYSICIAN with Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

10.  At all times material, Defendant DR. CHIEDOZIE ANYANWU (hereinafter "ANYANWU") held the position of EMEGENCY ROOM PHYSICIAN ASSISTANT with Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

11.     At all times material, Defendant CHASTITY CRUZ (hereinafter "CRUZ") held the position of HUMAN RESOURCES MANAGER/BUSINESS PARTNER for Defendant at NYP and held supervisory authority over Plaintiff with regard to her employment.

12.     At all times material, Defendant THOMAS GUGLIEMO (hereinafter "GUGLIEMO") held the position of EMERGENCY ROOM REGISTERED NURSE for Defendant at  NYP and held supervisory authority over Plaintiff with regard to her employment.

13.     At all times material, Defendant LUCRENCIA ORPHEE (hereinafter "ORPHEE") held the position of EMERGENCY ROOM REGISTERED NURSE for Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

14.     At some time material, Defendant CHRISTOPHER WALKER (hereinafter "WALKER") held the position of EMERGENCY ROOM REGISTERED NURSE for Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

15.     At all times material, Defendant FARLEY OBUSAN (hereinafter "OBUSAN") held the position of EMERGENCY ROOM NURSING MANAGER for Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

16.     At all times material, Defendant ROBERTO HUNTE JR. (hereinafter "ROBERTO HUNTE JR.") held the position of EMERGENCY ROOM PATIENT ACCESS MANAGER for Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

17.     At all times material, Defendant AUDREA BLACHARD (hereinafter "BLACHARD") held the position of EMERGENCY ROOM PATIENT ACCESS SUPERVISOR with Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

18.     At all times material, Defendant JAMELA DANIELS (hereinafter "HARRIS") held the

position of SUPERVISOR in the patient access department with Defendant NYP and held supervisory authority over Plaintiff in regard to her employment.

19.     At some time material, Defendant TARIK COLLINS (hereinafter "COLLINS") held the position of EMERGENCY ROOM PATIENT ACCESS ADVISOR AND LATER CHANGED TO UNIT ASSISTANT for Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

20.     At some time material, Defendant MICHAEL DZCEZ (hereinafter "DZCEZ") held the position of EMERGENCY ROOM PATIENT FINANCE ADVISOR AND LATER CHANGED TO UNIT ASSISTANT for Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

21.     At some time material, Defendant JENSI MERCEDES (hereinafter "MERCEDES") held the position of EMERGENCY ROOM PATIENT FINANCE ADVISOR AND LATER CHANGED TO UNIT ASSISTANT for Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

22.     At all times material, Defendant MAY FLORES  (hereinafter "FLORES") held the position of NURSING MANAGER for Defendant NYP and held supervisory authority over Plaintiff with regard to her employment.

23.     At all times material, Defendant LESTER WELCH (hereinafter "WELCH") held the position of PATIENT FINANCE ADVISOR in the emergency room for Defendant NYP.

24.     At all times material, Defendant MIRIAM NOLASCO (hereinafter "NOLASCO") held the position of UNIT SECRETARY in the emergency room for Defendant NYP, and held supervisory authority over Plaintiff with regard to her employment.

## MATERIAL FACTS

25. Around March 2, 2015, JANE DOE began her employment with, NEW YORK-PRESBYTERIAN HOSPITAL COLUMBIA UNIVERSITY MEDICAL CENTER, as an Emergency Room Patient Finance Adviser working the night shift 10:45pm-8:15am.

26. Around March of 2016, Defendant ANYANWU went to Plaintiff's house for breakfast and violently raped Plaintiff. Defendant ANYANWU forcefully undressed Plaintiff, and Plaintiff attempted to push Defendant ANYANWU off of her, but to no avail. Defendant ANYANWU raped Plaintiff by forcefully penetrating Plaintiff vaginally, against her will. Throughout the entire sexual assault, Plaintiff cried and begged Defendant ANYANWU to stop, but he refused. Defendant ANYANWU held Plaintiff down during the rape.

27. After the rape, when Plaintiff returned to work, from that moment forward Defendant ANYANWU pursued Plaintiff, demanding a sexual relationship, despite Plaintiff consistently rebuffing the sexual advances.

28. Around March 2016, Defendant ANYANWU told Plaintiff to "suck my dick in the private bathroom in RME" or Plaintiff would be terminated. Defendant ANYANWU told Plaintiff that she needed to learn how to, "suck my dick hard like an HIV Prostitute that likes to get your ass beat and knows how to suck dicks for child support money." Defendant ANYANWU threatened Plaintiff that he was going to make her life impossible if she did not do what Defendant ANYANWU wanted Plaintiff to do, and that he would get the rest of the staff to make Plaintiff's life hell. Plaintiff objected to and rebuffed Defendant ANYANWU's disgusting sexual advances.

29. That same day, around March of 2016, Plaintiff complained to Defendant ROBERTO HUNT JR. about the sexual harassment she was forced to endure. No corrective action was taken,

and in direct retaliation for Plaintiff's complaints, Plaintiff was given a false performance warning.

30.   Around March of 2016, Defendant JUAN CARLOS GARCIA locked Plaintiff in a unisex bathroom and demanded that Plaintiff perform oral sex on him.   Defendant DR. JUAN CARLOS GARCIA then took out his penis and told Plaintiff to "suck my dick like an HIV porn star prostitute" and Defendant JUAN CARLOS GARCIA then groped Plaintiff's buttocks, and asked Plaintiff asking if she enjoyed getting anal.   Defendant DR. JUAN CARLOS GARCIA threatened Plaintiff and told her that he was not the one who "raped that African Nigerian piece of shit P.A. (referring to Plaintiff's brief sexual encounter with Defendant ANYANWU)" and that the way Defendant JUAN CARLOS GARCIA was treating Plaintiff was "ordered by administration" and there was nothing that Plaintiff could do about it because she was already the "broke bitch there" and they were going to continue to break Plaintiff until they all felt like letting her go.

31.   Plaintiff pushed her way past Defendant DR. JUAN CARLOS GARCIA and ran out of the bathroom and immediately complained to Defendant ROBERTO HUNT JR., who responded, "if you don't stop complaining I'm going to fire you."

32.   Soon thereafter, around March of 2016, Defendant DR. JUAN CARLOS GARCIA told Plaintiff that if she kept complaining he was going to issue her negative performance evaluations.  In front of Plaintiff, Defendant DR. JUAN CARLOS GARCIA began counting a large sum of money and pointed to someone and said to Plaintiff, "this bitch (Maria Cartagena) is about to get fired, do you want to be next?  You cannot stand up for yourself, you do not have enough money, or the intelligence to do it."

33.   Plaintiff immediately complained to Defendant ROBERTO HUNT JR. and requested that she

be changed to a different shift, so she would not have to work with Defendant DR. JUAN
CARLOS GARCIA anymore.  Defendant ROBERTO HUNT JR. simply suspended Plaintiff
for making complaints of discrimination, and told Plaintiff that if she continued to complaint
she would get fired.

34.   Around March of 2016, while at work, Defendant COLLINS asked Plaintiff sexually
inappropriate questions including whether Plaintiff participated in orgies or snowballing (a
repulsive sexual term).   Plaintiff rejected Defendant COLLINS sexual overtures but the
harassment continued.

35.   Around March of 2016, Defendant COLLINS stole a note pad with all of Plaintiff's logins
and contacts, stating that he was going to haze Plaintiff and give her phone number out to all
the psych patients and homeless, and that there is nothing that Plaintiff could do about it.
Plaintiff then went to the restroom and Defendant COLLINS logged into her Facebook at
work and told Plaintiff that he was not going to let her have her notepad back, and that he
was going to continue to log on to watch porn so that Plaintiff would get in trouble until
Plaintiff invited him over.  Defendant COLLINS also gave Plaintiff a rubber band and said,
"this is CHIEDOZIE'S (Defendant ANYANWU) message to you, is it stretched out enough
yet?  He wants to give the pussy back to you."

36.   Around April of 2016, Defendant COLLINS repulsively asked Plaintiff asked Plaintiff, in
front of patients,  "do you like to be surrounded by a group of men in an orgy, with you
snowballing and cumswapping like an HIV prostitute?  Do you like that?"

37.   Around March of 2016, Defendant COLLINS told Plaintiff that her family and friends "are
all prostitutes with AIDS."

38.   On numerous occasions, Defendant ORPHEE asked Plaintiff if she was "a lesbian that would

give him double oral sex" and that Defendant ANYANWU wanted to "give Plaintiff her pussy back because he didn't think it was worth it."

39.     On one occasion, Defendant GUGLIEMO sat down in the EMERGENCY ROOM and began laughing and asked Plaintiff to "cum inside of me, I want to retire early and become a veterinarian too."  Defendant GUGLIEMO also frequently told Plaintiff that she needed to "go back to high school to fight with the inebriated prostitutes that come to get their stomachs pumped."

40.     On a nearly daily basis, Defendant GUGLIEMO also told Plaintiff that she "could not concentrate unless she sucked a dick, that was Gods plan, and that Defendant ANYANWU deserved better because he's a doctor."  Defendant GUGLIEMO also told Plaintiff on a frequent basis that she wants "to suck Defendant ANYANWU'S dick, he feels so good inside of you."

41.     Defendant DR. JUAN CARLOS GARCIA also asked Plaintiff if she was going to solicit herself, calling her "the sloppy seconds" with the nurses and doctors in front of everyone who could see.  Defendant DR. JUAN CARLOS GARCIA mocked Plaintiff saying, "I am not the one that raped you.  Don't be surprised, once you fuck you have to get the fuck out."

42.     On numerous occasions, Defendants employee Carlos Noyola asked Plaintiff if she was a lesbian and showed Plaintiff pornographic videos of anal sex on his cell phone, asking Plaintiff if she "liked that because all the doctors want that kind of thing, and to have oral sex."  Plaintiff immediately complained to Defendant BLACHARD and she said "I just don't want to know about none of that shit, please keep it moving, your love life is none of our business.  Keep that to yourself or see ROBERT HUNTE JR.  What you need is some dick, get yourself a man please, stop complaining."

43.     Defendants ROBERTO HUNTE JR. and CRUZ did nothing about the complaints and kept telling Plaintiff that they could not accommodate her request to be transferred to another department, and that they wanted Plaintiff to resign.

44.     Around April of 2016, Defendant WALKER said to Plaintiff, "oh are you like a lesbian? Why are you walking around here distracting us like some lesbian porn star?  Do you think about fist fucking and tribbing?"

45.     Plaintiff protested and complained of the egregious sexual harassment she was forced to endure and DEFENDANT COLLINS simply said to Plaintiff, "you know it's the way we have all our new employees especially when you don't want to get to know anybody you just have to get used to it."

46.     Around April of 2016, Plaintiff complained about the extremely egregious sexual harassment she was forced to endure to Defendant ROBERTO HUNTE, JR.  He simply responded, "[Jane] did they physically harm you? maybe you heard it the wrong way? You don't have to be best friends with people here all you have to do is tolerate it.  As a matter of fact I am going to write you up."  Defendant ROBERTO HUNTE, JR. then issued Plaintiff a false write up in retaliation for her complaints of discrimination.

47.     Around April of 2016, Plaintiff complained to Defendant ROBERTO HUNTE, JR. that Defendants OBUSAN and WALKER made sexually harassing comments about Plaintiff in front of patients and physicians.  No corrective action was ever taken.

48.     Around April of 2016, Plaintiff again complained to her manager, Defendant ROBERTO HUNT JR., that Defendant COLLINS continued to make sexual remarks to Plaintiff in front of patients, including that Plaintiff is a "lesbian with a nasty vagina and AIDS."  Despite Plaintiff's complaints, no corrective action was taken.

49.  Around May of 2016, in direct retaliation for Plaintiff's complaints of discrimination, Defendant ROBERTO HUNTE, JR. suspended Plaintiff, resulting in a financial loss to Plaintiff.

50.  On numerous occasion, Plaintiff DOE complained to Defendants OBUSAN and FLORES about the sexual harassment she was forced to endure, but to no avail.

51.  Around November 7, 2016, Plaintiff complained again to Defendant ROBERTO HUNTE, JR. that Defendant COLLINS said to Plaintiff, "why the fuck can't you fucking concentrate on the pharmacies that the previous shift didn't do that's not my job instead of worrying about how many dicks your hard core anal slut lesbian ass is going to suck worry about that."

52.  Around November 16, 2016, Defendant WALKER told Plaintiff that she "looked like a porn star and is only good for oral sex."  On that same day, Plaintiff complained to her manager, Defendant ROBERTO HUNT JR. about the sexual harassment from both Defendant COLLINS and Defendant WALKER.  Instead of taking any corrective action, Defendant ROBERTO HUNT JR. gave Plaintiff a disciplinary write up in retaliation for her complaints of discrimination.  Defendant ROBERTO HUNT JR. also told Plaintiff that he would fire Plaintiff if she continued to complaint to him.

53.  From Around August of 2016 until Plaintiff's termination in January of 2017, Defendant MERCEDES and Defendant DCECZ constantly yelled at Plaintiff, "my dick in your mouth" and "its double the fun when management does not care and are the ones who want to give you that double oral sex people love to fanaticize about with three dicks in your mouth. Management is going to terminate you."

54.  Around August 14, 2016, Plaintiff complained to Defendant ROBERTO HUNTE, JR. that

Defendants MERCEDES and DCECZ made discriminatory sexual comments to Plaintiff in front of patients and physicians, stating that Plaintiff "loves to give double oral sex and it's double the fun when management doesn't care," as well as that Plaintiff is, "too loose" and opened and closed their mouths asking if Plaintiff's jaw bone hurt. Defendant ROBERTO HUNTE, JR. simply replied, "I think you need a vacation. Think about it, why is this happening to you?"

55. Around November 18, 2017, Defendant ROBERTO HUNTE JR. issued Plaintiff another false performances write up because of her continuous complaints of discrimination, and told Plaintiff that she will get fired if she continues to complain.

56. Plaintiff also made numerous complaints of the discrimination she endured to Defendants BLACHARD and DANIELS but to no avail.

57. Around November of 2017, Defendant LESTER WELCH said to Plaintiff, "stop thinking about oral sex, pay attention, register the patients."

58. Plaintiff complained to Defendant ROBERTO HUNTE, JR. and in direct retaliation for Plaintiff's complaints of discrimination, on or about in or around November of 2016, Defendant ROBERTO HUNTE, JR. issued Plaintiff and false negative performance evaluation.

59. Defendant MIRIAM NOLASCO said to Plaintiff, "you better start learning how to have oral sex" and called Plaintiff an "HIV prostitute."

60. Around January of 2017, Defendant ROBERTO HUNTE, JR. Plaintiff submitted to Defendant ROBERTO HUNTE, JR. an FMLA request to take time off because of the anxiety she endured due to the constant sexual harassment. Defendant ROBERTO HUNTE, JR. simply responded, "no I can't take you serious, you

need to go home without pay and stay there until I call you back and if you keep coming back I am going to make your vacation longer. Defendant ROBERTO HUNTE, JR. suspended Plaintiff without pay because of her sex/gender, and in direct retaliation for having made continuous complaints of discrimination and severe sexual harassment that she faced.

61.    Around January 1, 2017, Defendants terminated Plaintiff because of her sex/gender and in retaliation for having complained about sexual harassment and discrimination in the workplace.

62.    Defendants discriminated against Plaintiff because of her sex/gender and for having requested FMLA leave, and in retaliation for Plaintiff having complained about sexual harassment and discrimination in the workplace and opposed such discrimination.

63.    Defendants subjected Claim ant to sex/gender discrimination, quid pro quo sexual harassment, hostile work environment, retaliation and wrongful termination.

64.    Defendants subjected Claim ant to sex/gender discrimination, quid pro quo sexual harassment, hostile work environment, retaliation and wrongful termination.

65.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

66.    As Defendant's actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant.

67.    The above are just some examples of the sexual harassment, unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

68.  Defendants' actions constituted a continuing violation of the applicable federal, state city and county laws.

69.  Plaintiff hereby demands reinstatement to her position.

70.  Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

71.  Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.


## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

72.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

73.  Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices, It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

74.  NYP DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing race discrimination, national origin discriminant, sex discrimination and a hostile work environment.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

75.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

76.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a)  provides  that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

77.     NYP DEFENDANTS engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF ACTION**
**FOR VIOLATIONS OF THE**
**FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.**
**(NOT AGAINST ANY INDIVIDUAL DEFENDANTS)**

78.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79.     §2612 of the Family Medical Leave Act states in pertinent part:

(a) In general
   (1) Entitlement to leave
   Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.

80.    DEFENDANT NYP violated Plaintiff's FMLA rights by failing to provide her with

appropriate leave thereunder.


### AS A FOURTH CAUSE OF ACTION
### FOR RETALIATION AND INTERFERENCE UNDER THE
### FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.
### (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

81.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint, as if the same were set forth herein fully at length.

82.    §2615 of the FMLA states as follows:

Prohibited acts
(a) Interference with rights
(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

83.   DEFENDANT NYP unlawfully interfered, restrained, and denied Plaintiff's right to exercise
and attempt to exercise her rights under the above section and discriminated and retaliated
against Plaintiff by terminating Plaintiff from her employment for opposing Defendant's
unlawful employment practices and attempting to exercise her rights.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

84.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of
this complaint as if fully set forth at length.

85.   Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For
an employer or licensing agency, because of an individual's age, race, creed, color, national
origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics,
marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to
discharge from employment such individual or to discriminate against such individual in
compensation or in terms, conditions or privileges of employment."

86.   Defendants engaged in an unlawful discriminatory practice by discriminating against
Plaintiff because of her race, national origin, sex and gender.

87.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of
New York State Executive Law § 296.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

88. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

89. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

90. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

**AS A SEVENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

91. Plaintiff repeats and re-alleges each and every allegation made in the above  paragraphs of this complaint as if fully set forth at length.

92. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

93. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

### AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

94.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

95.   The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of      any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

96.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of her race, national origin, sex and gender.

97.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

### AS A NINTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

98.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

99.   The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be

unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

100. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against Plaintiff because of his opposition to the unlawful employment practices of Plaintiffs' employer.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

101. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

102. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

103. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS AN ELEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

104. Plaintiff repeats and re-alleges each and every allegation made in the above  paragraphs of this complaint as if fully set forth at length.

105. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an

unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

106.    Defendants violated the above section as set forth herein.


### AS A TWELFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

107.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

108.    Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such

discriminatory conduct.

109.    Defendants violated the above section as set forth herein.

## AS A THIRTEENTH CAUSE OF ACTION FOR
## ASSAULT AND BATTERY
## AGAINST DEFENDANTS ANYANWU AND JUAN CARLOS GARCIA,
## INDIVIDUALLY,

110.    Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

111.    That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein.

## AS A FOURTEENTH CAUSE OF ACTION BY VICTIM OF CONDUCT
## CONSTITUTING CERTAIN SEXUAL OFFENSES
## AGGRAVATED SEXUAL ABUSE IN THE FIRST DEGREE
## AGAINST DEFENDANTS ANYANWU AND JUAN CARLOS GARCIA,
## INDIVIDUALLY

112.    Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

113.    § 130.35 of the New York State Penal Law provides as follows: Rape in the first degree 1 A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.35

114.    § 130.50 of the New York State Penal Law provides as follows: Criminal sexual act in the first degree 1 A person is guilty of criminal sexual act in the first degree when he or she

engages in oral sexual conduct or anal sexual conduct with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven yeas old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.50.

115.   Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing physical injury to such person:

(1) By forcible compulsion; or

(2) Who is incapable of consent by reason of being physically helpless;

116.   Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing

117.   Aggravated sexual abuse in the first degree is a class B felony."

118.   Defendants ANYANWU AND JUAN CARLOS GARCIA violated the herein sections as set forth herein.

119.   Defendants ANYANWU AND JUAN CARLOS GARCIA sexually assaulted Plaintiff in a way that was in violation of the above.

120.   § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or

criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

121. Defendants ANYANWU AND JUAN CARLOS GARCIA is civilly liable under § 213-c for violating all of the above Sections of the New York State Penal Law as described above.

122. Defendants violated the above law as set forth herein.

**AS A FIFTEENTH CAUSE OF ACTION**
**GENDER MOTIOVATED VIOLENCE PROTECTION ACT**
**AGAINST DEFENDANTS ANYANWU AND JUAN CARLOS GARCIA,**
**INDIVIDUALLY,**

123. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

124. N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor

or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

125. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

126. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

127. Defendant's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

128. As a result of defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

     **WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages,

attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:  New York, New York
       October 22, 2018

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

By:       /s/ Abe Melamed
           Abraham Z. Melamed, Esq.
           1 Penn Plaza, Suite 4905
           New York, New York 10119
           (212) 587-0760